People v Williams (2026 NY Slip Op 01881)

People v Williams

2026 NY Slip Op 01881

Decided on March 27, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting
Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to
revision before publication in the Official Reports.

Decided on March 27, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., LINDLEY, OGDEN, GREENWOOD, AND
HANNAH, JJ.

119 KA 24-00439

[*1]THE PEOPLE OF THE STATE OF NEW YORK,
RESPONDENT,
vSHALA WILLIAMS, DEFENDANT-APPELLANT. 

JOHN R. LEWIS, SLEEPY HOLLOW, FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY
W. OASTLER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Onondaga County Court (Theodore H. Limpert, J.),
rendered October 12, 2023. The judgment convicted defendant upon a jury verdict of
murder in the second degree, assault in the second degree and criminal possession of a
weapon in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is reversed on the law
and a new trial is granted.
Memorandum: Defendant was previously convicted after a jury trial of, inter alia,
murder in the second degree (Penal Law § 125.25 [1]) and assault in the second
degree (§ 120.05 [2]). He appealed, and this Court affirmed the judgment
(People v Williams [appeal No. 1], 175 AD3d 980, 980 [4th Dept 2019], lv
denied 34 NY3d 1020 [2019]). However, in a separate appeal, this Court remitted to
County Court for a hearing pursuant to CPL 440.30 (5) (People v Williams
[appeal No. 2], 175 AD3d 980, 980 [4th Dept 2019]). After a hearing on defendant's
motion pursuant to CPL 440.10 to vacate the judgment of conviction on the ground of
ineffective assistance of counsel, the court (Dougherty, J.) denied the motion, but we
reversed the order, granted the motion, vacated the judgment, and granted defendant a
new trial (People v
Williams, 206 AD3d 1625, 1625 [4th Dept 2022], lv denied 38 NY3d
1154 [2022]). Defendant was tried and convicted again of, inter alia, one count each of
murder in the second degree (Penal Law § 125.25 [1]) and assault in the second
degree (§ 120.05 [2]), and he now appeals. We agree with defendant that the court
(Limpert, J.) erred in refusing to admit in evidence, as a statement against penal interest,
the testimony from the CPL article 440 hearing of a witness unavailable to testify at the
second trial.
This case arises from an incident in which a male victim and a female victim were
shot with bullets matching a .38 or .357 caliber firearm through a closed window of the
male victim's residence, killing the male victim. The shooting took place several hours
after defendant had attended a gathering at the residence, during which defendant and the
male victim had a physical altercation. It was the People's theory of the case that
defendant returned to the residence later that night and, in retaliation for the earlier
altercation, shot the victims through a rear window in the residence. In support of that
theory, the People offered, among other things, the testimony of a male neighbor who
asserted that he observed the same male in a dark hoodie who had fought with the male
victim earlier in the evening banging on the front door of the residence before
disappearing around the side of the residence just prior to the shooting.
At the CPL article 440 hearing, however, a witness testified, against the advice of his
counsel, that on the night of the shooting he and a third party committed a string of
crimes, including an armed robbery of another residence with a .22 caliber firearm. The
witness explained that he and the third party then retrieved a second firearm, a .38 caliber
handgun, and proceeded to the male victim's residence to undertake another robbery. He
further testified that, while he and the third party were standing outside the male victim's
residence, someone inside [*2]turned on a light and
startled the third party, who then fired shots into the residence from the backyard through
a closed window. The witness was unequivocal that defendant was not present during the
shooting and did not fire the shots. The witness acknowledged that he might incur legal
penalties, including a potential charge of felony murder, should defendant be successful
in vacating the judgment of conviction as a result of the witness's testimony.
Defense counsel intended to call that witness to testify at defendant's second trial.
The witness, however, when questioned outside the presence of the jury, invoked his Fifth
Amendment privilege against self-incrimination. The court denied defense counsel's
request that the witness's testimony from the CPL article 440 hearing be admitted in
evidence as a statement against penal interest and read to the jury. We agree with
defendant that the court erred.
"A court's discretion in evidentiary rulings is circumscribed by the rules of evidence
and the defendant's constitutional right to present a defense" (People v Carroll, 95
NY2d 375, 385 [2000]). Hearsay evidence is admissible as a declaration against penal
interest where "four elements are met: (1) the declarant is unavailable to testify as a
witness; (2) when the statement was made, the declarant was aware that it was adverse to
[their] penal interest; (3) the declarant has competent knowledge of the facts underlying
the statement; and (4) supporting circumstances independent of the statement itself attest
to its trustworthiness and reliability" (People v Soto, 26 NY3d 455, 461 [2015]; see People v Shabazz, 22 NY3d
896, 898 [2013]; People v Shortridge, 65 NY2d 309, 312 [1985], rearg
dismissed 73 NY2d 995 [1989]). Here, the court expressly determined that the
witness's testimony met the requirements of the first three elements in that the witness's
invocation of his Fifth Amendment rights rendered him unavailable (see People v Ennis, 11 NY3d
403, 412-413 [2008], cert denied 556 US 1240 [2009]), the witness's
testimony was against his penal interest at the time he testified, and the witness had
sufficient knowledge of the relevant facts (see Soto, 26 NY3d at 461).
The court nonetheless concluded that the testimony failed on the fourth factor, i.e.,
whether "supporting circumstances independent of the statement itself attest to its
trustworthiness and reliability" (id.). "The fourth factor is the 'most important'
aspect of the exception" (Shabazz, 22 NY3d at 898, quoting People v
Thomas, 68 NY2d 194, 200 [1986], cert denied 480 US 948 [1987]; see
People v Settles, 46 NY2d 154, 167, 168-170 [1978]). "When considering the
reliability of a declaration, courts should also consider the circumstances of the statement,
such as, among other things, the declarant's motive in making the statement—i.e.,
whether the declarant exculpated a loved one or inculpated someone else, the declarant's
personality and mental state, and 'the internal consistency and coherence of the
declaration' " (People v
DiPippo, 27 NY3d 127, 137 [2016], quoting Shortridge, 65 NY2d at
313). "[D]eclarations that exculpate the defendant, as here, are subject to a more lenient
standard" (Soto, 26 NY3d at 462). "Assuming that the other elements are
satisfied, such statements can be admissible if there is 'a reasonable possibility that the
statement might be true' " (Shabazz, 22 NY3d at 898), and "even [c]ircumstances
of seeming indifference that harmonize the statement may be sufficient to furnish the
necessary link" (Soto, 26 NY3d at 462 [internal quotation marks omitted]; see
Settles, 46 NY2d at 169-170). "[U]nder this lesser standard, . . . the proffered
evidence must still provide 'persuasive assurances of trustworthiness' " (People v Thibodeau, 31 NY3d
1155, 1159 [2018]). However, "[i]f the proponent of the statement is able to establish
this possibility of trustworthiness, it is the function of the jury alone to determine whether
the declaration is sufficient to create reasonable doubt of guilt" (Settles, 46 NY2d
at 170).
Here, we conclude, based on the circumstances of the witness's CPL article 440
testimony and the trial record, from which that testimony was absent, that "there is 'a
reasonable possibility that the [testimony] might be true' " (Shabazz, 22 NY3d at
898). Initially, the witness's description of the third party shooting at the window from the
backyard when the light went on is consistent with the female victim's testimony that she
was shot immediately after she turned on the light and the physical evidence that the shots
were fired through the rear window. The witness testified that the third party picked up a
.38 firearm, which is consistent with the projectiles recovered from the shooting, from a
nearby location just prior to the shooting. The witness's description of running down the
driveway with the third party immediately following the shots, across the street, and then
over a backyard fence coincides with a female neighbor's description in her trial
testimony of two men jumping over her back fence. The testimony of a law enforcement
witness also corroborated the witness's account of the two prior robberies described by
the witness during his CPL article 440 testimony. Further, there is no evidence that [*3]the witness had a familial or close relationship with
defendant or other "obvious motive for [the witness] to falsely implicate himself"
(DiPippo, 27 NY3d at 137).
In light of the more lenient standard applied to exculpatory statements, we conclude
that the initial threshold of reliability is met, i.e., that there is a "reasonable possibility that
the statement might be true" (Settles, 46 NY2d at 169-170). In concluding to the
contrary, the dissent highlights certain inconsistencies between the witness's CPL article
440 testimony and the evidence presented by the prosecution at trial. Initially, we note
that evidence that tends to exculpate a defendant will, by its nature, likely be inconsistent
with at least some of the People's proof. Further, inconsistencies in a witness's testimony,
either internally or with other evidence presented at trial, merely present credibility issues
for a jury to resolve (see People
v Fricke, 216 AD3d 1446, 1447 [4th Dept 2023], lv denied 40 NY3d 928
[2023]; People v Savery,
209 AD3d 1268, 1269-1270 [4th Dept 2022], lv denied 39 NY3d 1075
[2023]). Here, none of the purported failings of the witness's testimony highlighted by the
dissent rendered his testimony any less reliable than that of the prosecution witnesses.
Indeed, the jury was already called upon to resolve inconsistencies in, among other things,
the male neighbor's trial testimony, on which the People relied heavily. Notably, the male
neighbor's testimony regarding his observations of the initial physical altercation and the
subsequent shooting, both of which, according to the male neighbor, involved the same
male in a dark hoodie, is inconsistent with the testimony of the female
victim—with which the witness's CPL article 440 testimony is
consistent—as well as the male neighbor's own prior statements to law
enforcement officers. Thus, because defendant "establish[ed] th[e] possibility of
trustworthiness [of the witness's CPL article 440 testimony], it [was] the function of the
jury alone to determine whether the [testimony] is sufficient to create reasonable doubt of
guilt" (Settles, 46 NY2d at 170).
The court therefore abused its discretion in refusing to admit the witness's CPL article
440 testimony as a statement against penal interest in light of the exculpatory nature of
the excluded testimony and the circumstantial nature of the prosecution's case. Indeed,
given the inconsistent testimony of the prosecution's own witnesses, we cannot say that
"the proof of guilt was overwhelming" and thus we conclude that the error was not
harmless (People v Grant, 7
NY3d 421, 424 [2006]; see People v Crimmins, 36 NY2d 230, 241-242
[1975]). We therefore reverse the judgment and grant defendant a new trial on the
indictment.
All concur except Lindley and Greenwood, JJ., who dissent and
vote to affirm in the following memorandum: We respectfully dissent. This Court
previously affirmed a judgment convicting defendant of, inter alia, murder in the second
degree (People v Williams [appeal No. 1], 175 AD3d 980 [4th Dept 2019], lv
denied 34 NY3d 1020 [2019]) but thereafter vacated the judgment following a CPL
article 440 hearing and granted him a new trial on the ground of ineffective assistance of
counsel (People v Williams,
206 AD3d 1625 [4th Dept 2022], lv denied 38 NY3d 1154 [2022]). At
defendant's second trial, he called to testify a man (the witness) who had testified at the
CPL article 440 hearing, but the witness invoked his Fifth Amendment privilege against
self-incrimination. Defendant requested that the witness's testimony be admitted as a
statement against penal interest, but County Court denied the request.
We disagree with the majority that the court abused its discretion in refusing to admit
the witness's testimony as a declaration against penal interest (see People v Smith, 214 AD3d
1424, 1425 [4th Dept 2023], lv denied 40 NY3d 931 [2023]). "A statement
qualifies as a declaration against interest if four elements are met: (1) the declarant is
unavailable to testify as a witness; (2) when the statement was made, the declarant was
aware that it was adverse to [their] penal interest; (3) the declarant has competent
knowledge of the facts underlying the statement; and (4) supporting circumstances
independent of the statement itself attest to its trustworthiness and reliability" (People v Soto, 26 NY3d
455, 460-461 [2015]; see People v Settles, 46 NY2d 154, 167 [1978]). Only
the fourth requirement is at issue here.
The rationale for allowing in evidence a statement against penal interest "stems from
the assumption that a person would not ordinarily make a statement which jeopardizes
[their] interest by subjecting [themselves] to criminal prosecution and incarceration. As
with all generalizations, however, human motivation and personality renders the stated
reason for permitting these declarations immediately suspect" (Settles, 46 NY2d
at 168). Where, as here, defendant is seeking to introduce the hearsay statements in his
own defense, the reliability of the witness's statements is demonstrated "if the supportive
evidence 'establishes a reasonable [*4]possibility that the
statement might be true' " (People v DiPippo, 27 NY3d 127, 137 [2016], quoting
Settles, 46 NY2d at 169-170; see People v Shabazz, 22 NY3d 896, 898 [2013]). In other
words, " 'there must be some evidence, independent of the declaration itself, which fairly
tends to support the facts asserted therein' " (DiPippo, 27 NY3d at 137). "[T]he
proffered evidence must . . . provide 'persuasive assurances of trustworthiness' " (People v Thibodeau, 31 NY3d
1155, 1159 [2018], quoting Chambers v Mississippi, 410 US 284, 302
[1973]).
Here, the record supports the court's determination that the independent corroboration
necessary for admissibility of the declaration against penal interest was not sufficient. The
"determination of the reliability of proffered declarations against penal interest 'involves a
delicate balance of diverse factors and is entrusted to the sound judgment of the trial
court, which is aptly suited to weigh the circumstances surrounding the declaration and
the evidence used to bolster its reliability' " (Thibodeau, 31 NY3d at 1159-
1160).
At trial, the evidence established that defendant and a friend had attended a gathering
in the late evening at a residence where a man (male victim) was house-sitting
(residence). Defendant and the male victim had a physical altercation after defendant
refused to leave the residence. After the fight, defendant ran from the residence, and
defendant's friend left several minutes later. The friend later returned to the residence and
remained there while the male victim and a woman (female victim) went to a bedroom.
The female victim could not sleep so she got up and turned on the light in the bedroom,
and bullets came through a closed window, killing the male victim and injuring the
female victim. Defendant's friend fled the residence.
At the CPL article 440 hearing, the witness testified that, after committing a home
invasion robbery earlier that evening, he and another man (purported shooter) went to the
residence and walked to the back of the house. The lights inside the home flicked on, the
purported shooter fired shots, and they both ran away.
We conclude that the witness's testimony was not corroborated by independent
evidence at trial and indeed was at odds with the evidence. A male neighbor testified that
he saw the same man who had been fighting with the male victim earlier that evening go
down the driveway of the residence just 30 seconds before the neighbor heard shots and
glass breaking. Further, although the witness testified that he and the purported shooter
ran away and jumped over a fence into a backyard, a female neighbor testified that a man
with dreadlocks was one of two men who had jumped over a fence into a backyard, and
her description matched the appearance of defendant's friend. The female neighbor also
testified that the man with the dreadlocks (i.e., the friend) asked the other man why he
shot "the girl," which the witness and the purported shooter would have had no way of
knowing had occurred.
Further, the witness's testimony was essentially that he and the purported shooter
intended to engage in a random robbery that was completely unlike the home invasion
robbery they committed earlier that evening, when they went to a home where they knew
a resident had marihuana, robbed the people inside the home, fired shots, and then left.
The witness testified that the purported shooter then acquired a different caliber gun and
proceeded to a residence of unknown occupants, did not enter the residence but
proceeded to the back of it, and simply fired shots inside the residence when a light
turned on. Under all the circumstances, we conclude that the witness's testimony did not
bear " 'persuasive assurances of trustworthiness' " (Thibodeau, 31 NY3d at 1159),
and we would affirm the judgment.
Entered: March 27, 2026
Ann Dillon Flynn
Clerk of the Court